JASON J. BACH
Nevada Bar No. 7984
**THE BACH LAW FIRM, LLC**
7881 West Charleston, Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANDREW KAHL, <br><br> *Plaintiff,* <br><br> v. <br><br> SUPERIOR VANLINES INC LLC, a Nevada limited liability company; MOVING SERVICES SP LLC, a Nevada limited liability company, DOES I-X; *and* ROE CORPORATIONS XI-XX, *inclusive*, <br><br> *Defendants.* | Civil Action No. 2:22-cv-01249-CDS-NJK <br><br> **FIRST AMENDED COMPLAINT** <br> **(Jury Demanded)** |

COMES NOW, Plaintiff, ANDREW KAHL ("Plaintiff" or "Mr. Kahl"), by and through his undersigned counsel, and hereby complains and alleges against the above-named Defendants, SUPERIOR VANLINES INC LLC ("Superior"), and MOVING SERVICES SP LLC ("Moving Services"), Does, and Roe Corporations (collectively, with Superior, Moving Services and Does, "Defendants"), based upon knowledge, information and a reasonable belief derived therefrom, and represents as follows:

**INTRODUCTION**

Plaintiff brings this action asserting violations under the Carmack Amendment to the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706, *et seq.*, and related federal common law.

The action captioned above involves the overcharge, hostage, loss, and damage that Defendants caused to Plaintiff's property, damage incurred due to Defendants' negligence, and the replacement costs and consequential damages sustained as a result of Defendants' actions. Pursuant

to an Estimate/Order for Service and Bill of Lading for interstate carriage, Defendants packed and picked up the shipment of his cargo at Plaintiff's residence in San Diego, California, and were to timely deliver the shipment to Plaintiff's new residence in Longview, Texas. However, Defendants held the cargo hostage from the actual possession of the Plaintiff in a manner calculated to extort additional funds from the Plaintiff that are in excess of any amount in the Bill of Lading. Upon the filing of the original Complaint and Emergency Motion for Preliminary Injunction, a hearing was held by this Court and representatives of Defendants agreed to allow a third-party carrier to retrieve Plaintiff's household goods from their facility in Las Vegas, Nevada. Upon retrieval of those goods, it was discovered that numerous items were damaged and/or destroyed.

Accordingly, Plaintiff now petitions this Court for redress in the form of damages, costs and reasonable attorney's fees.

## PARTIES

1. Plaintiff, ANDREW KAHL, currently is a resident of the State of California.

2. Defendant, SUPERIOR VANLINES INC LLC, is a Nevada limited liability Company doing business in the State of Nevada, and, upon information and belief, across the country.

3. Defendant, MOVING SERVICES SP LLC, is a Nevada limited liability Company and agent of Defendant SUPERIOR VANLINES INC LLC.

4. Defendants Does I-X, inclusive (collectively, the "Doe Defendants," and together with Superior and Moving Services), are individuals who may be liable for damages with the named Defendants on the allegations set forth in this Complaint. Plaintiff may seek leave of Court to amend this Complaint to reflect the true names and identities of the Doe Defendants when known.

5. Defendants Roe Corporations XI-XX (collectively, the "Roe Defendants"), inclusive, are corporate entities that may be liable for damages with the named Defendants on the allegations set forth in this Complaint. Plaintiff may seek leave of the Court to amend this Complaint to reflect the true names and identities of the Roe Defendants when known.

6. At all relevant times, Defendants conducted business within the State of Nevada, including common carriage and delivery of cargo, and the provision of services related thereto. Defendants issued bills of lading and receipts from the State of Nevada for carriage and delivery of

cargo to the State of Texas, owned, operated, and/or controlled equipment moving in and out of the State of Nevada, improperly and wrongfully stored Plaintiff's goods in the State of Nevada, were involved in substantial and not isolated activities in the State of Nevada, had offices, agents or agency in the State of Nevada, breached contracts and committed torts within the State of Nevada, and are subject to jurisdiction of this Court.

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337, as this action arises from the carriage of goods in interstate commerce and is governed by federal statutes; including, but not limited to, the Carmack Amendment to the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706, *et seq*. (the "Carmack Amendment"), and federal common law related thereto.

8.  Venue is proper in the District of Nevada pursuant to 49 U.S.C. §§ 14706(d)(1) and 14706(d)(2) in that the claims arose in this district, and Defendants are motor carriers that conduct business in this judicial district.

9.  Costs and attorney's fees are sought.

## GENERAL FACTUAL ALLEGATIONS

10. Plaintiff, a recently retired Border Patrol Agent, decided to move from his home in San Diego, California to the greater Longview, Texas area. He first contacted Moving Services through a website called Budget Van Lines in the summer 2022, seeking a quote for a move of a five-bedroom household from San Diego. Multiple responders contacted the Plaintiff as a result of the website activity, offering to move his belongings, and all of which the Plaintiff later came to believe were the same or related company or agents thereof.

11. An agent for Superior, Moving Services provided an estimate, and Plaintiff settled on this bid, which seemed to be favorable.

12. Ultimately, the parties reached an agreement for the move of Plaintiff's possessions to take place in the end of May 2022.

13. Defendants, or their agents, negotiated an agreement (a "binding estimate") to provide moving services to the Plaintiff in exchange for an immediate $3,159.00 deposit, $3,185.00 paid upon

pick up of the goods in San Diego, and $9,556.00 upon delivery of the goods in the greater Longview, Texas area. With ancillary fees and costs, the total cost of the move in the binding estimate was $17,644.50.

14. The goods to be moved by the Defendants are valued by the Plaintiff in excess of $100,000.00.

15. As to insurance for the move, which the Plaintiff wanted to purchase, Defendants informed the Plaintiff upon negotiating the binding estimate that an insurance option would be selected by him during the pickup, whereupon he would choose between six deductibles (ranging between $250 and $2,500), and that would change the overall move cost, by raising the price of the move between $23,139.75 to $21,308.00, depending on the deductible finally chosen at the actual time of the move.

16. Obtaining insurance, and the Defendants' offer to supply access to insurance for the move, was a valuable inducement to the Plaintiff to agree to the binding estimate, since the base protection provided by the Defendants was stated to be just sixty cents per pound of product, which was inadequate for the Plaintiff's purposes.

17. In consideration of agreed freight, packing, storage, and ancillary costs, Defendants agreed to pack, store, transport, and carry the cargo from San Diego, California to the greater Longview, Texas, area and to discharge and deliver the cargo, in like good order and condition as when received and accepted by them, and in accordance with the terms of the bill of lading, estimate/order for services, receipts, and agreements under which it was shipped.

18. A day later than agreed, on June 1, 2022, Defendants Superior and Moving Services caused its employees to pack and load Plaintiff's property at his home in San Diego, California.

19. Upon arriving at the Plaintiff's home in San Diego, California, agents of the Defendants drove the moving semi-truck and trailer in a negligent fashion, striking and dragging cable/internet wires from the house of Plaintiff's disabled neighbor across the street from the Plaintiff's resident, pulling off a fascia board from the edge of her roof, cracking it and leaving it hanging from the eave. Additional, unapparent damage to the Plaintiff's neighbors appeared likely given the visible damage.

20. Regarding the property damage caused to the Plaintiff's neighbor's home, the agents of the Defendant were aloof and disinterested in the damage caused. The agents of the Defendant refused to take responsibility for the damages or to provide access to insurance coverage for the damage. Instead of taking responsibility for the negligence, the agents of the Defendant made it a new and unnegotiated condition of continuing to provide the move (other than that which had been agreed upon in the binding estimate of the Plaintiff) of the Plaintiff having to either cover the damage to his neighbor's house, or pay an additional $3,500 (over and above the amounts already agreed upon in the binding estimate) for a "shuttle service" to be used instead of the trailer continuing to be parked at the Plaintiff's home.

21. Under this duress, the Plaintiff agreed in writing to pay for the damages caused by the driver of the semi-truck and trailer, Defendants' agent.

22. Even so, Defendants still increased the amount to be paid by Plaintiff by an additional $3,000 for use of a "shuttle service" to finish loading for the move, and otherwise increased the cost of the move for Plaintiff by altering the cubic feet estimate for the move.

23. On that same day, the first day the agents of the Defendants arrived to begin the move, the agent of the Defendant refused to allow the Plaintiff to select the insurance coverage for the move that was anticipated to be selected on the day of the move when the binding estimate was made. This communication from Defendants also was paired with a new offer to rescind the binding estimate and form a new binding estimate that would cost $26,544.00, with no insurance available, for the same consideration that under the original binding estimate was to cost no more than $23,139.75 ($5,495.25 of which would have been optional insurance selected by the Plaintiff), primarily based on changes unilaterally imposed by Defendants regarding use of a "shuttle service" and altering the cubic feet estimate for the move.

24. Plaintiff, in light of communication with the agent for the Defendant, called the Moving Services office, speaking with an agent named "Shelly" who stated that (contrary to prior promises) no insurance option would be provided to the Plaintiff.

25. Defendants received and accepted cargo from Plaintiff in good order and condition.

26. With a series of further prejudicial delays and further improper impositions on the Plaintiff and his family, Defendants' crew loaded Plaintiff's property, transported and unloaded the property at their storage facility in Clark County, Nevada.

27. To obtain his goods in any fashion, the Defendants insisted that the agreed-upon amount of the move would be substantially increased. Defendants then informed Plaintiff that they were holding his possessions hostage until he pays additional funds not agreed to in the Bill of Lading.

28. Plaintiff requested that he be allowed to have his possessions picked up in Nevada by a new carrier, but Defendants refused to allow pick up and indicated that they would auction off Plaintiff's property.

29. Defendants caused the aforementioned hostage, loss, and non-delivery by their negligent, reckless, and/or intentional failure to properly arrange for, carry, store, secure, discharge, deliver, and care for the subject cargo.

30. Plaintiff has performed all conditions precedent required of him under the premises, including, but not limited to, timely and proper notice.

31. Plaintiff filed his original Complaint on August 3, 2022, and his Emergency Motion for Preliminary Injunction on August 4, 2022.

32. This Court held a hearing on Plaintiff's Emergency Motion on August 9, 2022. At that hearing, representatives of both named Defendants attended and agreed to allow a third-party carrier to retrieve Plaintiff's household goods from their climate-controlled storage facility in Las Vegas, Nevada.

33. Plaintiff's contracted third-party motor carrier arrived at Defendants' storage facility and found Plaintiff's household goods being stored in a trailer, without any climate control. It appeared that Plaintiff's goods had been sitting in the Las Vegas summer heat for a substantial period of time. The third-party carrier informed Plaintiff upon their arrival that many of the boxes and containers of his goods were badly damaged.

34. Upon receipt of his household goods, Plaintiff found numerous items had been damaged or destroyed while in the custody and care of Defendants.

35. Plaintiff also learned from the third-party motor carrier that Defendants had significantly misrepresented the cubic feet of Plaintiff's household goods, all in an attempt to overcharge Plaintiff.

36. While Defendants never made delivery of his household goods, Plaintiff has nevertheless submitted a Notice of Claim for damages within nine months of his receipt of his goods.

37. Upon information and belief, Plaintiff also believes that the owners, employees, and registered agents for Superior and Moving Services, Oz Ezra Malka (Case No. C-22-361649-1), Aviv Mordechai (Case No. C-22-361649-2), Mario Samson (Case No. C-22-361649-3), Ashley Roybal (Case No. C-22-361649-4) and Eric Gilleland (Case No. C-22-361649-5) are the same individuals who currently have pending criminal charges filed against them in Clark County District Court, including charges of (1) conspiracy to commit a crime, (2) multiple transactions involving fraud or deceit in course of enterprise or occupation, (3) theft, (4) obtaining money property under false pretense, (5) forgery, (6) extortionate collection of debt and (7) racketeering.

**FIRST CAUSE OF ACTION**
*AGAINST ALL DEFENDANTS*
*Pursuant to the Carmack Amendment of the Interstate Commerce Commission Termination Act of 1995 (49 U.S.C. § 14706, et seq.)*

38. Plaintiff realleges each and every one of the foregoing paragraphs and incorporates them herein by reference.

39. Defendant Superior is a "carrier" pursuant to 42 U.S.C. § 13102.

40. Defendant Moving Services is an agent of Superior.

41. Defendants' actions, as described above, constitute acts or omissions that are actionable pursuant to the Carmack Amendment and federal common law related thereto.

42. As a direct and proximate result of the above-described actions and omissions of Defendants, which constitute a violation of the Carmack Amendment, Plaintiff has suffered injury and damages all in an amount to be determined at trial.

43. As a result of Defendants' conduct, Defendants have caused Plaintiff to incur attorney's fees and, thus, Plaintiff is entitled to an award of attorney's fees pursuant to 49 U.S.C. § 14704(e).

///

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a jury trial for all issues in this matter.

**RELIEF REQUESTED**

***WHEREFORE***, Plaintiff prays that this Honorable Court enter judgment in favor of him, and against the Defendants, jointly and severally, for the following relief:

1. For general compensatory, special, and consequential damages in an amount to be determined at trial.
2. For pre-judgment interest.
3. For ancillary damages; including, but not limited to, attorney's fees and the costs and disbursements of this action.
4. For any other equitable or legal relief that the Court deems appropriate.

DATED this 6th day of January, 2023.

**THE BACH LAW FIRM, LLC**

By  */s/ Jason J. Bach*
   Jason J. Bach
   Nevada Bar No. 7984
   7881 West Charleston, Suite 165
   Las Vegas, Nevada 89117
   Telephone: (702) 925-8787
   Facsimile: (702) 925-8788
   Email: jbach@bachlawfirm.com
   *Attorney for Plaintiff*